LETITIA G. BROMWELL, *et al.*

*v.*

I. H. FLOWERS *et al.*

*Opinion filed October 24, 1905.*

1. DRAINAGE—*assessment for repairs rests in discretion of commissioners.* Under section 37 of the Levee act (Laws of 1885, p. 124,) it is not the imperative duty of the drainage commissioners, who have no funds available, to petition the court to levy an assessment for repairs, but is a matter which rests in their sound discretion.

2. SAME—*when mandamus will not lie to compel commissioners to levy assessment.* Mandamus to compel commissioners of a district organized under the Levee act, having no available funds, to petition the court to levy an assessment to clean out a lateral drain will not lie, where there is no showing that their refusal is arbitrary or that it amounts to an unjust discrimination against the land owner seeking to compel them to act.

APPEAL from the Circuit Court of Champaign county; the Hon. SOLON PHILBRICK, Judge, presiding.

RAY, DOBBINS & RILEY, and WIGHT & ALEXANDER, for appellants.

WILLIAM B. WEBBER, for appellees.

Mr. JUSTICE BOGGS delivered the opinion of the court:

The appellee district was organized on the 15th day of October, 1883, by an order of the county court of Champaign county, under the act approved and in force May 29, 1879, commonly called the "Levee act." (2 Starr & Cur. Stat. p. 1500.) The appellants are the owners of section 7, town 18, north, range 7, east, in Champaign county, which lands were included in the district. The system of ditches adopted and constructed by the dictrict included a lateral drain passing through said section 7 and thence emptying into the main ditch or drain of the system of ditches adopted and constructed. The work of constructing said main ditch and said lateral was performed as a whole and paid for by assessments on the lands benefited thereby. On the 11th day of March, 1904, the appellants exhibited in the circuit court of Champaign county a petition praying that a writ of *mandamus* issue, commanding the appellee commissioners of said district to forthwith clean out, deepen and repair said lateral drain through petitioners' lands and on below to the main ditch of said drainage district, in such manner as to afford an outlet for the tile in petitioners' lands and for the proper drainage of petitioners' lands, or, in case the commissioners of said drainage district have not the money on hand or already provided for to do said work, that they be directed to take such proceeding as is by law provided to raise the money necessary to do said work, and then clean out, deepen and repair and improve said lateral ditch so as to provide an outlet for the drainage of petitioners' lands. The petition was, as finally amended, held to be obnoxious to demurrer and was dismissed at the cost of the petitioners, who have brought the record here by appeal.

In addition to the facts hereinbefore stated, the petition alleged "that petitioners were assessed and paid $1835 for the construction of said system of drainage as originally constructed; that on two occasions since the construction of said system it has been necessary to levy additional assessments to clean out and open up the main ditch in said district, and upon the occasion of one of these levies petitioners were assessed and paid $540 and on the other assessment they were assessed and paid $300, making the total amount of $2675 paid by petitioners for the construction, maintenance, repair and improvement of said system of drainage; that the lateral drain through petitioners' land, as originally constructed, was not deep enough to adequately drain petitioners' land, and that the commissioners have allowed the said lateral open drain to become filled up with silt and overgrown with weeds, grass and willows, and so thereby obstructed that said lateral no longer affords an outlet for the tile drains laid by petitioners for the drainage of their lands; that the commissioners have expended all money levied and have no funds on hand to repair and improve said lateral drain, and that said lateral is one of many lateral drains in said district, and that the lateral in controversy only drains the land of a small minority of the owners of lands within said district, and that it has been and is impossible for petitioners to obtain the signatures of a majority of the land owners within said district who are of lawful age and who represent one-third in area of the lands in said district, on a petition to the county court of Champaign county for the levying of an assessment upon the lands in said district for the maintenance and repair of said lateral drain and additional work necessary for the adequate drainage of petitioners' lands; that petitioners have requested and demanded of the commissioners that they clean out, deepen and repair said lateral so established to drain petitioners' lands, or that they take such proceeding as by law is provided to levy an assessment for the purpose of cleaning out, deepening and improv-

ing said lateral through petitioners' lands in order to afford
an outlet and drainage for petitioners' lands, but that two
of the commissioners said they would do nothing until com-
pelled by the courts, but did not deny that the work was
needed, and the third commissioner expressed his willingness
to do the work and admitted it was needed, and that by reason
of the commissioners refusing to repair said lateral all of the
moneys paid by petitioners to said district have not bene-
fited petitioners or provided drainage for their lands; that in
consequence of the filling up of said lateral drain the lands
of petitioners became wet and unfit for cultivation and the
outlets of the tile on their lands stopped; that said lateral
is the only outlet to the main ditch provided by said commis-
sioners for the drainage of petitioners' lands, and that since
the same has become filled up petitioners derive no benefit
and will continue to derive no benefit from said system of
drainage until said lateral is cleaned out, opened up and deep-
ened in such way as to afford an outlet for the waters on
petitioners' lands."

The powers of the commissioners are such as the statute
confers upon them, and their duties are prescribed by the
statute. Section 37 of the act of May 29, 1879, (2 Starr &
Cur. Stat. par. 68, p. 1519,) in the body of the section, au-
thorizes the commissioners to appropriate and expend the
funds coming to their hands, among other purposes, in the
work of constructing, repairing and maintaining ditches,
drains, etc. The proviso to the section directs the course to
be pursued by the commissioners when all funds of the dis-
trict have been expended and the ditches and drains of the
district are in need of repair or of additional work thereon.
The petition shows that the commissioners have expended
all funds which have come into their hands, and the proviso
to the section is, therefore, the measure of the power and
duty of the commissioners. The said proviso provides that
when the funds of the district have been so expended, as-
sessments to procure funds to be expended in and about

217—12

the work of the maintenance and repairs of the ditches and drains, and other work specified in the proviso, may be levied· on the lands of the district under the order of the court within which the district was organized, "on the petition of the majority of the owners of lands within said district who are of lawful age and represent at least one-third in area of such lands; or on the petition of the commissioners, accompanied by an itemized statement of accounts made by the commissioners, under oath, showing the moneys received by the district and the manner in which they have been expended, together with plats, profiles of such additional work and estimated cost of the same." It appears from the petition herein for the *mandamus* that neither the requisite number of the owners of lands within the district nor of the commissioners will join in a petition to the county court for the levy of the assessment.

There is no statutory requirement that the lateral ditches shall be kept clean and in repair by the commissioners, they having no funds applicable to that purpose. The authority given them to petition the county court for an order levying an assessment to procure funds for that purpose made it the duty of the commissioners, on the demand of the appellants, to take into consideration all facts and circumstances affecting the expediency, justice and propriety of levying an assessment on all of the lands of the district for the purpose of repairing or deepening this lateral drain, and to join or refuse to join in the petition to the court, as their judgment or discretion, fairly and honestly executed, should dictate. The statute does not make it the imperative duty of the commissioners to petition for an assessment, but invests them with the power to do so, leaving the propriety of the exercise of the power to their judgment and discretion. This being true, the writ of *mandamus* may be availed of to require drainage commissioners to consider whether or not they will become petitioners, and the writ cannot be employed to compel them to sign the petition unless it shall appear that

their refusal to become petitioners is arbitrary, merely, and amounts to a fraud, or from a motive to accomplish their own personal or selfish ends. (*People* v. *Kent,* 160 Ill. 655; *Beidler* v. *Kochersperger,* 171 id. 563; *People* v. *VanCleave,* 183 id. 330.) The petition in the case at bar alleges that the commissioners have considered as to their duty and have declined to file their petition, and there is no averment that they have acted otherwise than fairly and in accordance with their best judgment as to the true interests of the district. If the discretion appeared to have been abused and made to work injustice, relief might be had by means of the writ of *mandamus.* (*Village of Glencoe* v. *People,* 78 Ill. 382.) It does not appear from the petition for *mandamus* that the refusal of the commissioners to petition for an assessment to be levied upon all of the lands of the district to be expended in repairing the lateral ditch through the lands of the appellants will work an injustice to them. It appears from the petition that the lateral drain through the lands of the appellants is but one of many like lateral drains in the district. Whether such other lateral drains are cleaned out and kept in repair by the owners of the lands through which they run, or from the funds of the district, is not disclosed by the petition. If the petition is to be taken most strongly against the petitioners, as is the rule, we are to assume that the lateral ditches are kept in repair by the land owners individually benefited thereby, and that being true, it would be manifestly unjust to the other owners of land in the district to require them to also contribute to keep in repair the lateral ditches through appellants' lands.

The demurrer was properly sustained, and the judgment is affirmed.                                      *Judgment affirmed.*