O. R. BROOKS *et al.* Appellees, *vs.* FRANK L. HATCH *et al.*
Appellants.

*Opinion filed October 16, 1914—Rehearing denied Dec. 9, 1914.*

1. DRAINAGE—*when limit of thirty cents per acre for annual assessment does not apply.* Under section 26½ of the Levee act, as amended in 1913, the limit of thirty cents per acre for the annual assessment does not apply to districts which had at the time of the amendment, or might thereafter have, pumping plants, the only limit in such case being that the amount cannot exceed the benefit to the land.

2. SAME—*effect where district has made no adequate provision for operating pumping plant.* The fact that a levee drainage district has made no adequate provision for operating a pumping plant does not preclude confirmation of an assessment to construct such plant and ditches leading thereto, as the commissioners have power, under sections 17½ and 26½ of the Levee act, as amended in 1913, to make adequate provision for such operation by annual assessments, and to do so is their imperative duty, which may, if necessary, be enforced by *mandamus.*

APPEAL from the County Court of Pike county; the Hon. PAUL F. GROTE, Judge, presiding.

WILLIAM MUMFORD, and JAMES H. MATHENY, for appellants.

W. E. WILLIAMS, and A. CLAY WILLIAMS, for appellees.

Mr. JUSTICE FARMER delivered the opinion of the court:

This is an appeal from a judgment of confirmation, by the county court of Pike county, of a special assessment for the construction of an additional pumping plant, an additional ditch, and some other work, in the McGee Creek Levee and Drainage District. The estimated cost of the proposed work was $60,000. From the order and judgment directing the levying of the said assessment and an annual assessment of $11,000 for maintaining the pumping

plants appellants prosecuted an appeal to this court. The judgment of the county court ordering the levy of a special assessment of $60,000 for the proposed work was affirmed but that part of the judgment ordering an annual assessment of $11,000 for maintenance and operation was reversed and the cause was remanded to the county court, with directions to sustain objections to the annual levy. (*Brooks* v. *Hatch,* 261 Ill. 179.) The cause was re-instated in the county court and a judgment rendered in accordance with the directions of this court, sustaining objections of appellants to the annual levy. The commissioners prepared and filed their assessment roll extending the $60,000 against the various tracts of land in the district. The appellants filed objections to the assessment against their lands. The first four objections were substantially the same although phrased in different words. The objection presented by them was, that one of the purposes for which the special assessment was levied was the construction of an additional pumping plant, and no provision had been made, or was being made, for the expense of operating it, by an assessment of annual benefits or otherwise. Objections 5 and 6 were, that the assessment against the lands of appellants was greater than the actual benefits that would accrue from the proposed work and greater than their proportionate share. Objection 7 was, that none of appellants' lands would be benefited by the proposed work. On motion of appellees the first four objections were stricken from the files. A hearing was had upon the remaining objections by a jury, and a verdict was returned making an assessment of $1670 against appellants' lands, which consist of more than 500 acres.

Counsel for appellants in their briefs say the errors assigned present the single question whether a special assessment should be confirmed when it is made for the construction of a pumping plant, and a ditch leading thereto depending upon the pumping plant for its efficiency, when

there is no fund on hand, no provision made or being made for its maintenance, and particularly when no provision has been made for the operation of the pump.

When the McGee Creek Levee and Drainage District was organized an annual assessment of thirty cents per acre was provided for maintenance and repairs. There are about 11,000 acres of land in the district, and this annual assessment would produce $3300. Appellants offered to prove on the hearing that this sum was wholly insufficient to pay for repairs, maintenance and operation, that there were no funds on hand to pay the operating expenses of the pump, and that no provision had been made, or was being made, therefor. The court sustained objections to this offered evidence.

Section 17 of the original Levee act limited the assessment for annual repairs to thirty cents per acre on the lands of the district. This was retained in section 17½ of the amendment of 1885. Prior to 1905 there was no statute which expressly authorized the erection and maintenance of pumping plants in drainage districts. In 1905 an act was passed purporting to amend the Levee act, and authorizing the erection, maintenance and operation of one or more pumping plants, when necessary for the proper drainage of the lands of the district, out of funds raised by special assessment. This act was amended in 1907, and as amended authorized an assessment of sixty cents per acre for the maintenance and operation of a pumping plant or plants and the repair of drains and ditches. The act was again amended in 1911, and as amended authorized the levying of such annual amount of benefits for operating pumping plants and maintaining and repairing ditches and levees as the court found would accrue to the lands and were necessary for those purposes. No limit was placed on the annual amount of the levy except the necessities of the district and the benefits to the land. All three of these acts were held invalid in *Brooks* v. *Hatch, supra,* in not complying with

the requirements of section 13 of article 4 of the constitution. In that case it was further held that the erection and operation of a pumping plant, where necessary for the complete and successful drainage of the lands in the district, was authorized by the Levee act, and, of course, the annual assessment may be used to pay the expenses of operation of the pumping plant as well as the repair of the levee and ditches. It is true, as contended by appellants, that unless means are provided for the operation of the pump no benefit would result to the lands by reason of its being installed in the district. If the annual assessment of thirty cents per acre, provided for upon the organization of the district, is conceded to be insufficient to keep the pump in operation and the levee and ditches in repair, we do not think such fact would render erroneous the judgment confirming the assessment in this case. That the lands of the district would be benefited to the amount of the estimated cost of the work ($60,000) was determined on the former appeal.

It is conceded in the brief of appellants that their lands were impartially assessed for no more than their fair proportion of the cost of the proposed work and no more than the benefits they would receive from the proposed improvements if the same are operated and maintained, but it is contended "that the order for special assessment for construction is dormant and its enforcement is improvident and illegal without proper proceedings for an annual assessment for maintenance and operation." The original petition in this case for an assessment of $60,000 for the establishment of an additional pumping plant, the construction of an additional ditch, and other work, was filed in September, 1912. In 1913 the legislature amended sections 17½ and 26½ of the Levee act. As amended, section 17½ provides that if an annual assessment made at the time of the original organization of the district is thereafter found to be insufficient, it may be increased in the manner provided for the

levying of additional assessments. That section limits the amount of the annual assessment for keeping the levee or ditches in repair to thirty cents per acre on all the lands in the district. Prior to 1913 section 26½ provided that where a levee or ditch had been theretofore built under any law of this State or might thereafter be built under the act of which said section formed a part, the annual amount of benefits for keeping the same in repair should be due and payable on the first of September each year, and it was made the duty of the court in which the proceedings were had, to require the commissioners to report the condition of the levee or ditch at its July term each year, together with their estimate of the amount necessary to keep the levees or ditches in repair and pay all necessary and incidental expenses for the ensuing year, provided the amount collected under the order of the court should not, in the aggregate, amount to a greater sum in any one year than thirty cents per acre upon all the lands within the district. Immediately following the provisions quoted in substance, this language was added by the amendment of 1913: "Except in districts which now have, or may hereafter have, pumping plants, in which districts the annual amount of benefits collected each year shall be a sum sufficient to keep the levees, ditches, drains and other works of said district, in repair and to maintain in operation such pumping plant or plants."

By this amendment the limit of thirty cents per acre does not apply to districts which had at the time of the amendment, or might thereafter have, pumping plants. If the annual assessment levied at the organization of the district shall be found insufficient to keep the levee and ditches in repair and operate the pumping plant, under section 17½, as amended in 1913, the amount may be increased by the levying of an additional assessment. The additional levy under section 26½ may be of a sum sufficient to keep the levees and ditches in repair and maintain in operation the pumping plant. The amount that may be levied in a dis-

trict having a pumping plant or plants is limited only to a sum sufficient for that purpose, which, of course, could not, in any event, exceed the benefits to the land from such assessment. Independent of section 37, a discussion of which we do not think necessary to a decision of this case, it seems clear the McGee Creek Levee and Drainage District has full power and authority to provide, by annual assessment, means for operating its pumping plants if the provisions heretofore made prove insufficient. We do not understand this to be controverted by appellants, but their contention is that no sufficient fund has been provided for operating the pumps, and that such fund must be definitely and legally provided at the time when the assessment for the pump is made and confirmed. If appellants are right in this contention it would seem to follow that an assessment made for the construction of levees and ditches upon the organization of a drainage district could not be confirmed unless at the same time an annual assessment were made for repairs, and, so far as we are advised, this has never been held to be the law. But if that were otherwise an open question, it seems to be settled by section 17½ as amended in 1913, which provides that if an assessment of annual benefits is not made at the time of the original organization of the district, or if it is then made and thereafter found insufficient, an additional assessment may be levied.

Under the statute in force at the time the judgment of confirmation in this case was rendered the drainage commissioners had ample power to provide means necessary to operate the pumping plants, and it was and is their duty to make such provision. In *Peotone Drainage District* v. *Adams,* 163 Ill. 428, it was held that *mandamus* would lie against the commissioners to compel them to deepen, alter and change a drain so as to furnish the petitioner a sufficient outlet for the drainage of his land in the district. The district in that case was organized under the Farm Drain-

age act.  In `Bromwell` v. *Flowers,* 217 Ill. 174, the court considered the right of a land owner to a writ of *mandamus* to compel the commissioners of a district organized under the Levee act to clean out, deepen and repair a lateral ditch through petitioner's lands, or, in case there was not sufficient money for that purpose on hand, that the commissioners be ordered to take the necessary steps to provide it in the manner required by law, and when provided, to use it to clean out, deepen and repair the ditch.  A demurrer was sustained to the petition by the trial court, and that judgment was affirmed by this court on the ground that the commissioners were invested with some discretion in the levying of an assessment to clean out and repair ditches, and it did not appear from the petition that the discretion of the commissioners had been abused or an injustice done the petitioner, but it was there held, in substance, that if the refusal of the commissioners is arbitrary and amounts to an abuse of discretion or a fraud and works injustice, relief may be granted by *mandamus.  Binder* v. *Langhorst,* 234 Ill. 583, was an action brought by a land owner against the commissioners of a drainage district organized under the Levee act, for damages claimed to have resulted from the neglect and refusal of the commissioners to construct a ditch of sufficient capacity to properly drain the plaintiff's land.  The court held the action would lie, and after referring to *Peotone Drainage District* v. *Adams, supra,* said: "The obligation and the power of the commissioners are the same under the Levee act as under the Farm Drainage act.  The language conferring authority is not the same and the method of assessment is different but the duty to provide drainage for the lands is just as imperative."

Under the above cited authorities it would seem clear that it is the imperative duty of the commissioners to provide means for operating the pumps.  It is true, as asserted by appellants, that no benefits can result from the establishment of pumps unless they are operated.  The commis-

sioners are bound to make provision for such operation, and this duty is not discretionary. In that respect it is unlike the duty imposed upon the commissioners to keep the ditches in repair, for the necessity of that work is one about which opinions might differ, but we have seen it has been held that where the refusal of the commissioners to repair or provide means to repair ditches is fraudulent, arbitrary, oppressive or unjust, an action for the writ of *mandamus* will lie. The necessity for providing means for operating the pumps admits of no difference of opinion, although opinions might differ as to the amount of money needed for that purpose. The statute confers power upon the commissioners to provide the necessary means to operate the pumps, and where the means already provided prove insufficient, to provide additional means, and it is the imperative duty of the commissioners to exercise this power and provide funds to operate the pumps. If they fail, voluntarily, to exercise this power and perform their duty in that regard its performance may be compelled by a land owner or owners by *mandamus*.

Appellants cite *Village of River Forest* v. *Cummings*, 261 Ill. 228, *City of Chicago* v. *Kemp*, 240 id. 56, and other like cases. Those were special assessment cases under the Local Improvement act. The ordinances authorizing the improvements, and upon which the special assessments were based, only provided for a part of the improvements. The lands were assessed on a basis of benefits as if each ordinance had provided for the entire improvement, and this was held erroneous. If we are correct in the reasons heretofore given for our conclusions, those cases are not applicable here.

The judgment of the county court is affirmed.

*Judgment affirmed.*